IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

AMANDA W. SAILE, Individually    §
and as Next Friend of            §
ELIZABETH SAILE, a minor,        §
                                 §
     Plaintiff,                  §
                                 §
vs.                              §    C.A. NO. C-03-336
                                 §
AMERICAN HOME PRODUCTS CORP.     §
d/b/a WYETH, et al.,             §
                                 §
     Defendants.                 §

## ORDER OF REMAND

On this day came on to be considered Plaintiff's Motion to Remand the above-styled action for lack of subject-matter jurisdiction.  For the reasons discussed below, the Motion to Remand is GRANTED and the above-styled action is REMANDED pursuant to 28 U.S.C. § 1447(c) to the 94th Judicial District Court of Nueces County, Texas, where it was originally filed and assigned Cause Number 03-3987-C.

## I.  Background

On June 27, 2003, Plaintiff, acting both in a representative capacity on behalf of her minor child ("Child Plaintiff") and on her own behalf for separate claims ("Parent Plaintiff"), filed the above-styled action in state court, alleging that the Child Plaintiff was injured as a result of exposure to a compound known as Thimerosal, which is used in numerous childhood vaccines. Defendants include the manufacturers and distributors of Thimerosal, the suppliers of the vaccines, and the doctors and

clinics who administered the vaccines.

On September 5, 2003, less than a month after being served with Plaintiff's Petition, Defendant Merck & Co. ("Merck") removed the action to this Court, alleging that federal subject-matter jurisdiction exists pursuant to 28 U.S.C. § 1332. Specifically, Merck alleged that the amount in controversy exceeds $75,000 and that the Plaintiff (a Texas citizen) and all properly-joined Defendants are citizens of different states. Merck acknowledged that one of the Defendants, Dr. Bruce A. Hoekstra, M.D., is a Texas citizen (and thus not diverse from Plaintiff), but Merck argued that Dr. Hoekstra's citizenship should be disregarded for the purposes of determining diversity jurisdiction because he was improperly joined. Merck based its claim of improper joinder on two separate arguments: (1) Plaintiff's claim against Dr. Hoekstra is barred by the National Childhood Vaccine Injury Act ("Vaccine Act"), 42 U.S.C. §§ 300aa-1, et seq., because Plaintiff failed to first file a petition against Dr. Hoekstra in Vaccine Court; and, (2) Plaintiff's claim against Dr. Hoekstra is not cognizable under Texas law.

On September 19, 2003, Plaintiff filed a Motion to Remand, contesting both of the above arguments and arguing that a recent Fifth Circuit improper-joinder decision required remand. See Smallwood v. Illinois Cent. R.R. Co., 342 F.3d 400 (5th Cir. 2003), vacated by Smallwood v. Illinois Cent. R.R. Co., 355 F.3d 357 (5th Cir. 2003) (granting rehearing en banc). This Court stayed

-2-

proceedings in this action pending the Fifth Circuit's en banc decision (and subsequent appeal to the Supreme Court) in Smallwood. See Smallwood v. Illinois Cent. R.R. Co., 385 F.3d 568 (5th Cir. 2004), cert. denied, 125 S. Ct. 1825 (2005). After a telephonic conference on June 17, 2005, and subsequent briefing by the parties, the Motion to Remand is now ripe for decision.

## II. Discussion

A party may remove an action from state court to federal court if the action is one over which the federal court possesses subject-matter jurisdiction. See 28 U.S.C. § 1441(a). The removing party--as the party seeking the federal forum--bears the burden of showing that federal jurisdiction exists and that removal was proper. See Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002). "Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." Id. (citing Acuna v. Brown & Root, Inc., 200 F.3d 335, 339 (5th Cir. 2000) ("[D]oubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction.")).

Merck removed this case pursuant to 28 U.S.C. § 1441, asserting diversity subject-matter jurisdiction under 28 U.S.C. § 1332. Therefore, whether this Court has subject-matter jurisdiction depends upon whether the Plaintiffs' claims satisfy the two requirements for diversity jurisdiction: (1) the complete

-3-

diversity-of-citizenship requirement; and (2) the $75,000 amount-in-controversy requirement.  See 28 U.S.C. § 1332(a).  The sole issue here is whether Dr. Hoekstra was improperly joined, such that the complete diversity-of-citizenship requirement is satisfied.

"It is well-established that the diversity statute requires 'complete diversity' of citizenship: A district court cannot exercise diversity jurisdiction if one of the plaintiffs shares the same state citizenship as any one of the defendants." Corfield v. Dallas Glen Hills LP, 355 F.3d 853, 857 (5th Cir. 2003) (citations omitted).  As noted above, Plaintiff shares the same citizenship--Texas--as one of the Defendants, Dr. Hoekstra.  However, the Fifth Circuit has counseled district courts to disregard the citizenship of parties which have been improperly joined.  See Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 572-73 (5th Cir. 2004) (en banc) ("The doctrine of improper joinder rests on ... statutory underpinnings, which entitle a defendant to remove to a federal forum unless an in-state defendant has been 'properly joined.'") (citing 28 U.S.C. § 1441(b)).  Smallwood explains:

> The Federal courts should not sanction devices intended to prevent the removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court as to permit the state courts, in proper cases, to retain their own jurisdiction.

Id. at 573 (quotation omitted).

The Fifth Circuit has recognized that "improper joinder" (also

-4-

known as "fraudulent joinder")[1] may be established in one of two ways: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court."  Id. at 573 (citation omitted).  Only the second way is at issue here, and the test for improper joinder under this approach is whether "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." Id.  When applying this test, a court must "resolve all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party.  [A court is] then to determine whether that party has any possibility of recovery against the party whose joinder is questioned."  Hart v. Bayer Corp., 199 F.3d 239, 246 (5th Cir. 2000) (quotation omitted).

Merck argues that Plaintiff's claim against Dr. Hoekstra is barred by the Vaccine Act because Plaintiff failed to first file a petition against Dr. Hoekstra in Vaccine Court.  The Vaccine Act requires all persons suing a "vaccine administrator," such as Dr. Hoekstra (the pediatrician who allegedly administered vaccines to the Child Plaintiff), to first file a petition in Vaccine Court.

---

[1]  The term, "improper joinder," was recently adopted by the Fifth Circuit.  See Smallwood, 385 F.3d at 571 n.1 ("We adopt the term 'improper joinder' as being more consistent with the statutory language than the term 'fraudulent joinder,' which has been used in the past.  Although there is no substantive difference between the two terms, 'improper joinder' is preferred.").

See 42 U.S.C. § 300aa-11(a)(2))A).   Assuming _arguendo_ that
Plaintiff failed to file a petition against Dr. Hoekstra in Vaccine
Court,[2] Parent Plaintiff has asserted claims separate and
independent from those asserted by Child Plaintiff.   The Fifth
Circuit recently held that the Vaccine Act's restriction on the
filing of civil actions prior to the filing of a petition in
Vaccine Court does not apply to the claims of _parents_ of children
with an alleged vaccine-related injury.   See _Moss v. Merck & Co._,
381 F.3d 501, 505 (5th Cir. 2004) ("Because the Vaccine Act neither
provides a mechanism for their recovery on a loss of consortium
suit, nor openly bars their right to pursue remedies afforded by
state tort law, the [parents] may pursue their claims.").   Hence,
_Moss_ forecloses Merck's first argument in favor of removal, because
Parent Plaintiff may pursue her claim outside of the Vaccine Court.

     Merck also argues that Parent Plaintiff's claim against Dr.
Hoekstra is not cognizable under Texas law.   Merck first contends
that the claim against Dr. Hoekstra is too vague and conclusory to
state a cognizable claim.

     Plaintiff alleges, _inter alia_:

> The Healthcare Defendants [including Dr. Hoekstra] are
> liable for their own distinct tortious conduct, separate
> and apart from the conduct of the Manufacturer
> Defendants, although they acted in concert with them. ...
> The conduct of the Healthcare Defendants forms an
> independent basis for imposing liability on them for
> commission of the acts referenced above.

---

[2] Plaintiff does not dispute this allegation by Merck.

(Pl.'s Orig. Petition ¶¶ 11.02-11.03.)   The claims referenced by
the count against Dr. Hoekstra include negligence and assault.
(Pl.'s Orig. Petition ¶¶ 8.01-8.02, 10.01-10.03, 11.01.)  Plaintiff
also submitted an affidavit which states:

> As part of the medical care provided by Dr. Bruce A.
> Hoekstra, my child was administered vaccinations
> containing the product Thimerosal.  I was not informed by
> my child's medical care providers that the Thimerosal
> injected into my child could cause severe and/or
> permanent injury. ... I relied upon Dr. Bruce A.
> Hoekstra, as professionals [sic] administering
> vaccinations, to keep apprized of available information
> relevant to my child's care.  As professionals [sic]
> administering vaccinations, Dr. Bruce A. Hoekstra would
> have, or should have, been aware of Thimerosal's dangers.

(Saile Aff. ¶¶ 4-5.)[3]

Taken together, these allegations are somewhat conclusory, but
they are substantially more detailed than those deemed insufficient
to defeat a claim of improper joinder in the case relied upon by
Merck, <u>Griggs v. State Farm Lloyds</u>, 181 F.3d 694 (5th Cir. 1999).
In <u>Griggs</u>, the Fifth Circuit stated:

> The only factual allegation even mentioning Blum [the
> sole non-diverse defendant] merely states that
> 'Defendants [sic], through its local agent, Lark Blum
> issued an insurance policy.'  The remainder of Griggs'
> pleadings refer to conduct by the 'Defendants' that can
> in no way be attributed to Blum.  Both Griggs' factual
> allegations and his articulation of his legal claims

---

[3] The Court construes Plaintiff's Affidavit as
supplementing the allegations in the Petition.  <u>See</u> <u>Griggs v.</u>
<u>State Farm Lloyds</u>, 181 F.3d 694, 700 (5th Cir. 1999) (when
reviewing an improper joinder claim, "a federal court may
consider summary judgment-type evidence such as affidavits ... to
the extent that the factual allegations in [plaintiff's]
affidavit clarify or amplify the claims actually alleged in the
... petition") (citation omitted).

-7-

> focus solely upon State Farm Lloyds' conduct in the processing and ultimate denial of his claim. ...
> We cannot say that Griggs' petition, which mentions Blum once in passing, then fails to state any specific actionable conduct on her part whatsoever, meets even the liberalized requirements that permit notice pleading.

Id. at 699.  Instead, this case is more similar to the situation presented in Hart v. Bayer Corp., 199 F.3d 239 (5th Cir. 2000), where the Fifth Circuit rejected an improper-joinder argument when the plaintiff's fraud claim against the diversity-defeating defendant alleged simply that the defendant "knew or should have known" that his representation was false.  Id. at 247.  The court stated that while this allegation was too conclusory to satisfy Federal Rule of Civil Procedure 9(b)'s pleading requirements, "Plaintiffs' complaint, taking all allegations set forth as true and taking all inferences in a light most favorable to plaintiffs, at least raises the possibility that they could succeed in establishing a claim against [the non-diverse defendant] under Mississippi law."  Id. at 248 & n.6.  Similarly, here the Court will look to Texas law to see if Parent Plaintiff's somewhat conclusory allegations "at least raises the possibility that [she] could succeed in establishing a claim against" Dr. Hoekstra.

The Texas Medical Liability and Insurance Improvement Act ("MLIIA") provides the exclusive cause of action for any claim against a healthcare provider (regardless of what label is attached to it) if the claim is "predicated on a departure from the accepted standards of medical care."  MacGregor Med. Ass'n v. Campbell, 985

S.W.2d 38, 41 (Tex. 1998).  The MLIIA provides a cause of action for "negligence in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent [to medical care or a medical procedure]." Tex. Civ. Prac. & Rem. Code § 74.101.  Viewing the facts in the light most favorable to Parent Plaintiff, as set out above, this is what has been alleged in the Petition and Plaintiff's Affidavit.

Merck contends (and Plaintiff does not dispute) that Plaintiff failed to comply with the MLIIA's notice provisions.  When filing a healthcare liability claim, a plaintiff must give written notice to each healthcare provider against whom the claim is being made at least 60 days before the filing of a suit.  See Tex. Civ. Prac. & Rem. Code § 74.051(a).  However, a Texas court presented with a plaintiff who has failed to provide notice would not dismiss the plaintiff's claims, but would only abate the proceedings for 60 days to allow the plaintiff to file the requisite notice.  See Schepps v. Presbyterian Hosp. of Dallas, 652 S.W.2d 934, 938 (Tex. 1983) (holding it was error for the trial court to dismiss plaintiff's claims for failure to give notice).  If failure to give notice would not prevent Parent Plaintiff from recovering in state court, then improper joinder cannot be established on this basis.

Merck also argues that Parent Plaintiff's claimed damages, loss of wages, is not compensable in Texas.  Neither party presents authority from Texas courts deciding the issue of whether a parent may recover lost wages due to caring for the needs of an injured

child.  In <u>Pressey v. Patterson</u>, 898 F.2d 1018 (5th Cir. 1990), the Fifth Court held that, under Texas law, nursing services provided by a parent to a child should be valued on the basis of the reasonable value of the services, not what the parent could have earned in other employment.  <u>See</u> <u>id.</u> at 1026.  The case, however, does not stand for the proposition that lost wages categorically are not allowed under Texas law.  In the absence of any authority to the contrary, the Court cannot say that there exists no possibility Parent Plaintiff could recover some amount of her lost wages under Texas law.  <u>See</u> <u>Hart v. Bayer Corp.</u>, 199 F.3d 239, 246 (5th Cir. 2000) ("To prove their allegation of fraudulent joinder [removing parties] must demonstrate that there is <u>no possibility</u> that [plaintiff] would be able to establish a cause of action against them in state court. ... [The court] must initially resolve all disputed questions of fact and <u>all ambiguities in the controlling state law</u> in favor of the non-removing party.") (emphasis added); <u>see also</u> <u>Manguno v. Prudential Prop. & Cas. Ins. Co.</u>, 276 F.3d 720, 723 (5th Cir. 2002) ("Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand."); <u>Acuna v. Brown & Root, Inc.</u>, 200 F.3d 335, 339 (5th Cir. 2000) ("[D]oubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction.").

Finally, certain Defendants joining in the removal point to a "Suggestion of Bankruptcy" filed by Dr. Hoekstra on July 11, 2005,

which states that Dr. Hoekstra filed a voluntary chapter 7 petition in bankruptcy court on December 12, 2003.  However, the fact that Dr. Hoekstra filed a bankruptcy petition, which may have resulted in the discharge of Plaintiff's claims against him, cannot be considered when deciding the propriety of Merck's removal.  "The jurisdictional facts that support removal must be judged at the time of the removal." Gebbia v. Wal-Mart Stores, Inc., 233 F.3d 880, 883 (5th Cir. 2000) (emphasis added) (citation omitted).  Dr. Hoekstra filed his bankruptcy petition over two months after Merck's removal.

Therefore, for the reasons discussed above, Merck has failed to carry the heavy burden of proving Dr. Hoekstra was improperly joined.  See Smallwood, 385 F.3d at 574 ("The party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper.").

## III. Conclusion

The Motion to Remand is GRANTED and the above-styled action is hereby REMANDED pursuant to 28 U.S.C. § 1447(c) to the 94th Judicial District Court of Nueces County, Texas, where it was originally filed and assigned Cause Number 03-3987-C.

SIGNED and ENTERED this 11th day of August, 2005.

_____
Janis Graham Jack
United States District Judge

-11-